883 So.2d 927 (2004)
PEDIATRIC PAVILION, et al., Appellants,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 5D03-2648.
District Court of Appeal of Florida, Fifth District.
October 15, 2004.
*928 Donna Holshouser Stinson, of Broad and Cassel, Tallahassee, for Appellants.
Gregory J. Philo, Chief Appellate Counsel, Tallahassee, for Appellee.
GRIFFIN, J.
Pediatric Pavilion, Inc. ("Pediatric Pavilion") and Peds to Go d/b/a Childrenfirst Home Health Care Services ("Childrenfirst") appeal an order granting summary final judgment against them and entering a permanent injunction. We affirm in part and reverse in part.
This case arises out of the operation of a home at 180 Monica Court in Lake Mary, Florida ("the Lake Mary facility") which provided skilled nursing services to its residents. The home was one of a group of four homes located in private residences operated by Pediatric Pavilion. Skilled nursing services for the residents were provided by an affiliated company, Childrenfirst, which has as its primary specialty the care of "medically complex children." Childrenfirst operates under a home health care license obtained from the State of Florida's Agency for Health Care Administration ("AHCA").
On February 24, 2003, the AHCA filed a complaint for a temporary and permanent injunction against Pediatric Pavilion and Childrenfirst, alleging that Pediatric Pavilion was engaged in the operation of an unlicensed nursing home in Lake Mary with nursing care being provided by Childrenfirst. The complaint alleged that the home was also being operated in violation of the City of Lake Mary's fire and zoning codes, and without a needed occupational license. Count I of the complaint sought an order requiring Pediatric Pavilion to cease and desist. Count II sought entry of an injunction against Childrenfirst to prevent it from providing nursing care at an unlicensed facility.
Pediatric Pavilion and Childrenfirst answered that entry of an injunction was improper, as they had never been called on to cease and desist by AHCA and would have cooperated with the agency; that the medical care provided to the children always *929 had been provided under the auspices of AHCA, so that there had never been any real danger to the residents; that they or their predecessors in interest had operated the home in the same manner for many years, with the full knowledge and approval of AHCA; and that, upon being informed that a license would be required, they had immediately applied to the Department of Children and Families ("DCF") for a license.
Pediatric Pavilion and Childrenfirst also closed the Lake Mary facility in response to the filing of the complaint. When cross-motions for summary judgment were filed by the parties, Pediatric Pavilion and Childrenfirst asserted that AHCA's request for an injunction was moot, as they had ceased all operations in Lake Mary, had no intention of accepting anyone into the Lake Mary facility, and no other homes were unlicensed. AHCA filed a motion to amend its complaint by "interlineation," to insert a request for an injunction to prevent Pediatric Pavilion from operating an unlicensed nursing facility not only at the Lake Mary facility, but at "any location within the State of Florida."
The trial judge heard arguments on the parties' various motions and granted AHCA's motion for summary judgment without explanation. The trial court permanently enjoined Pediatric Pavilion and Childrenfirst "from providing nursing services without valid licenses as such is required by the State of Florida, and/or Seminole County and/or the City of Lake, [sic] Mary, Florida" and "from providing any home health or nursing services to any entity or facility that does not possess, hold and maintain a valid license from the State of Florida, Seminole County, and/or the City of Lake Mary, Florida."
In determining whether AHCA was entitled to an injunction, the primary issue on appeal is whether the Lake Mary home qualified as a "facility" within the meaning of part II of Chapter 400, which applies to "nursing homes." See §§ 400.011-400.334, Fla. Stat. (2002). Section 400.062(1), Florida Statutes (2002), provides that "[i]t is unlawful to operate or maintain a facility without first obtaining from the agency a license authorizing such operation." (emphasis added). "Facility" means:
any institution, building, residence, private home, or other place, whether operated for profit or not, including a place operated by a county or municipality, which undertakes through its ownership or management to provide for a period exceeding 24-hour nursing care, personal care, or custodial care for three or more persons not related to the owner or manager by blood or marriage, who by reason of illness, physical infirmity, or advanced age require such services, but does not include any place providing care and treatment primarily for the acutely ill. A facility offering services for fewer than three persons is within the meaning of this definition if it holds itself out to the public to be an establishment which regularly provides such services.
§ 400.021(8), Fla. Stat. (2002).
The controversy in this case centers on whether Pediatric Pavilion met the requirement that it had to undertake through its ownership or management to provide care for individuals needing such care. Appellants contend that Pediatric Pavilion "provided" no care to those staying in its facility, since all care was provided by Childrenfirst. However, the statute does not require ownership or management to directly "provide" care. It covers a situation where, through its ownership or management, it "provides for" care. This statutory language is broad enough to encompass those situations in which the management or ownership "provides for" care *930 by contracting with an outside nursing service. See also § 400.021(13), Fla. Stat. (2002) ("Nursing home facility" means "any facility which provides nursing services as defined in part I of chapter 464 and which is licensed according to this part." Emphasis added); § 400.021(14), Fla. Stat. (2002) ("Nursing services" mean "such services or acts as may be rendered, directly or indirectly, to and in behalf of a person by individuals as defined in s. 464.003." Emphasis added). Pediatric Pavilion's "undertaking" to provide for nursing care for its residents is also shown by its contract with its patients, in which it directly assumes a responsibility to provide skilled nursing care for its patients.
Appellants theorize that they are exempt from the nursing home statutes because their residents are in fact receiving nursing care within their own "home," as permitted by Part IV of Chapter 400, which applies to "Home Health Agencies." The statute allows home health agencies to provide services, including nursing services, to persons "in their own homes." See § 400.461, Fla. Stat. (2002). However, group "facilities" of the type involved in this case, in which residency is primarily intended to be temporary and remedial, do not appear to qualify as "homes," which Webster's defines a "a family's place of residence: DOMICILE." Webster's New Collegiate Dictionary, p. 547 (1976). Furthermore, the nursing home statutes apply by their terms to any "residence" or "private home" in which nursing care is provided on a twenty-four basis to three or more residents. § 400.062(1), Fla. Stat. (2002).
Appellants argue that even if the Lake Mary facility qualified as a nursing home under Chapter 400, it was error to issue an injunction, as they had already closed the facility and moved the residents before the injunction was issued. Given the facts of the case, we might agree; however, we see the decision to issue an injunction as a matter within the trial court's discretion. See City of Coral Springs v. Florida Nat'l Properties, 340 So.2d 1271 (Fla. 4th DCA 1976); Sarasota Beverage Co. v. Johnson, 551 So.2d 503, 509 (Fla. 2d DCA 1989).
Nonetheless, appellants are correct that the injunction issued in this case is overly broad. An injunction "may not be drawn to enjoin all conceivable breaches of the law; it must instead be carefully tailored to remedy only the specific harms shown." Operation Rescue v. Women's Health Center, Inc., 626 So.2d 664, 670 (Fla.1993). It may be no broader than is necessary to restrain the unlawful conduct and should constitute the least intrusive remedy that will be effective. Id. It must be adequately particularized and phrased in such language that it can with definiteness be complied with. Florida Peach Orchards, Inc. v. State, 190 So.2d 796, 798 (Fla. 1st DCA 1966).
The injunction issued here permanently enjoins appellants and their affiliates from "providing nursing services without valid licenses as such is required by the State of Florida, and/or Seminole County and/or the City of Lake, [sic] Mary, Florida." It also permanently enjoins appellants and their affiliates from "providing any home health or nursing services to any entity or facility that does not possess, hold and maintain a valid license from the State of Florida, Seminole County, and/or the City of Lake Mary, Florida." This injunction goes far beyond the issues raised by the complaint and, as written, is both overreaching and nonsensical. For example, the injunction requires appellants to obtain unspecified licenses from the State of Florida, Seminole County, and/or the City of Lake Mary, Florida before providing nursing services of any kind, although some of *931 these licenses may not be required. It is also unclear from the injunction precisely what licenses Pediatric Pavilion and Childrenfirst are required to obtain. We therefore vacate the injunction. If AHCA must have an injunction, it must be narrowly tailored to meet the issue in controversy.
AFFIRMED IN PART; REVERSED IN PART; INJUNCTION VACATED; AND REMANDED WITH DIRECTIONS.
THOMPSON and ORFINGER, JJ., concur.