**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**16-673**


**IN THE MATTER OF THE SUCCESSION OF JOHN ROBERT BISCAMP**



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 42,343
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**DAVID E. CHATELAIN\***
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and David E. Chatelain, Judges.


**AFFIRMED.**

---

**\*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.**

**E. Grey Burnes Talley**
**Burnes , Burnes & Talley**
**P. O. Box 650**
**Alexandria, LA 71309-0650**
**(318) 442-5231**
**COUNSEL FOR APPELLANTS:**
> **Collis Wayne Lott**
> **Winnie Fuller**
> **Betty Biscamp**
> **Robert Biscamp**

**James G. Theus**
**Theus Law Offices**
**P. O. Box 8432**
**Alexandria, LA 71301**
**(318) 769-9395**
**COUNSEL FOR APPELLEES:**
> **Tiffani Williams**
> **Aleesha Kuhn**

**Carmen T. Hebert**
**Carleton, Loraso & Hebert, LLC**
**445 N. Blvd., Ste. 625**
**Baton Rouge, LA 70802**
**(225) 282-0602**
**COUNSEL FOR APPELLEES:**
> **Tiffani Williams**
> **Aleesha Kuhn**

**CHATELAIN, Judge.**

In this succession case, the proponents of a notarial testament challenge the trial court's ruling declaring the testament an absolute nullity. Because we find the purported testament fails to contain the requisite attestation clause signed by the notary as mandated under La.Civ.Code art. 1577, we affirm.

## FACTS AND PROCEDURAL HISTORY

John Robert Biscamp (Biscamp) died on April 6, 2015, survived by two daughters—Alessha Biscamp Kuhn and Tiffiani Biscamp Williams (plaintiffs). On May 28, 2015, plaintiffs filed their "Petition and Order to Be Appointed Independent Administrator," alleging their father died intestate and requesting the appointment of Alessha Kuhn as independent administrator. Letters of Independent Administration were then issued to Aleesha Kuhn.

Not long thereafter, on June 8, 2015, Collis Wayne Lott (Lott) filed his "Reconventional Demand for Filing, Execution of Will, and for Possession," attaching thereto a document entitled "Last Will and Testament of John Robert Biscamp" (testament) executed in notarial form on December 22, 2010. Therein, Biscamp left equal and undivided interests in his residuary estate to his siblings, Lott, Winnie Lee Fuller, Verna Inez Barnett, Robert Lee Biscamp, and Betty Ann Biscamp (legatees). Though acknowledging his two daughters, the provisions of the testament noted Biscamp's failure to provide for any distribution to them was "intentional." Biscamp also nominated Lott as executor. On June 18, 2015, Letters of Independent Administration were issued to Lott, confirming his independent executorship.

On February 23, 2016, plaintiffs filed their "Petition to Annul Testament," alleging the testament was absolutely null because it did not conform with the formal requirements of La.Civ.Code art. 1577:

The alleged testament is absolutely null because it does not conform with the requirements of form prescribed under the Louisiana Civil Code article 1577. The attestation clause for the notary and two witnesses is not found in the Last Will and Testament, comprised of numbered pages 1-4, but in a separate document titled "Affidavit" comprised of numbered pages 1-2.

....

Further, the clauses in the "Affidavit" do not state that the testator signed in the presence of the witnesses **and notary** or that the witnesses signed in the presence of the notary.

Plaintiffs also noted the clause signed by the notary did not state that Biscamp declared the testament to be his testament to the notary in the presence of the witnesses.

In opposition, the legatees contended the nonconsecutive pagination did not give rise to an inference of two separate documents as a simple review of the margins, size, type, font, and other formatting was indicative of a single document with separate headings. Moreover, the legatees noted all the pages were executed by the signatories on the same date, December 22, 2010. The legatees further argued the affidavit was in fact an attestation, which provided that Biscamp signed in the presence of the witnesses and the notary and that the witnesses signed in the presence of the notary. To find otherwise, they cautioned, would place form over substance when it is more important that the required acts be done than that they be recited.

Trial was held on May 10, 2016. The only evidence admitted was a copy of the testament, which consists of a six-page document initialed "JRB" at the bottom of each page.[1] The first four pages set forth the dispositive portion, whereas the

---

[1] Although not an issue in this case, for completeness we note that the jurisprudence has held that although the testator only placed his initials on the bottom of each page, as opposed to a more formal signature, the testator's initials suffice for his signature. *Succession of Squires*, 93-1589 (La.App. 3 Cir. 6/1/94), 640 So.2d 813, *writ denied*, 94-1660 (La. 9/16/94), 642 So.2d 199; *Succession of Armstrong*, 93-2385 (La.App. 4 Cir. 4/28/94), 636 So.2d 1109, *writ denied*, 94-1370 (La. 9/16/94), 642 So.2d 196.

last two pages contain an "Affidavit" signed by Biscamp, two witnesses, and a notary. Notably, the pages of the testament are not numbered sequentially 1-6. Rather the second, third, and fourth pages are paginated "2, 3, and 4," respectively, with the sixth page numbered "2." Both the first page and fifth page lack pagination, and the certification of the witnesses on page 3 states the testament "consists of _____ pages[.]"

After taking the matter under advisement, the trial court rendered judgment declaring the testament "an absolute nullity for materially deviating from the form requirements of Louisiana Civil Code article 1577." In its written reasons, the trial court found:

> In comparing the will with the provisions of La. C.C. art. 1577, the purported attestation clause by the notary fails to state that the testator (1) declared the will to be his Last Will and Testament to the notary, (2) in the presence of the witnesses.
>
> Moreover, with respect to the statements by the witnesses set forth in the paragraph preceding the notary's statement, while this paragraph indicates that the witnesses were "sworn," that the "the Testator signs it willingly in our presence," and that the witnesses sign "in the presence and hearing of the Testator … and in the presence of each other, … as witness to the Testator's signing," this clause likewise does not clearly state that the will and necessary signatures were signed in the presence of all persons, including the notary. Thus, this paragraph likewise is defective.
>
> Therefore, the will in question does not contain the required attestation clause which creates the issue: is the defective attestation clause in the Last Will and Testament a material deviation from the manner of execution prescribed by La. C.C. art. 1577 and therefore fatal to the validity of the will?
>
> ….
>
> The jurisprudence has consistently held that where a will is merely notarized, but there is no declaration signed by the notary, such a clause is not in compliance with LSA-C.C. art. 1577. Further, such defects constitute a substantive defect fatal to the validity of the will and cannot be cured through the subsequent testimony of the witnesses and the notary….

Mr. Biscamp's will appears to be computer generated and prepared by a lay person. Regardless, the requisites of law still apply. Even though the result will be harsh, the Court is bound to follow the law applicable to and governing such instruments. The Court is a court of law and not of equity.

Accordingly, the trial court "regrettably" declared the testament an absolute nullity; recalled and set aside the order appointing Lott independent executor; recalled the letters of independent administration issued to Lott; recognized Aleesha Kuhn as the independent administrator of the succession; and declared the succession intestate. The legatees timely appealed the trial court's judgment.[2]

## DISCUSSION

The legatees assign two errors to the trial court's judgment. First, they contend the trial court erred in finding the "attestation clause by the notary fails to state that the testator (1) declared the will to be his Last Will and Testament to the notary, (2) in the presence of the witnesses." Second, they assert the trial court erred in finding the testament contains a material deviation from the manner of execution prescribed by La.Civ.Code art. 1577.

An appellate court must accord the factual findings of a trial court great weight in a will contest and cannot disturb such findings in the absence of manifest error. *In re Succession of Hebert*, 12-281 (La.App. 3 Cir. 10/3/12), 101 So.3d 131. However, the trial court's interpretation and application of legal principles and statutory provisions are legal findings subject to *de novo* review, "'without the great deference . . . we attach to credibility determinations.'" *Kevin Assocs., L.L.C. v. Crawford*, 03-211, p. 15 (La. 1/30/04), 865 So.2d 34, 43 (quoting *State v. Payne*, 01-3196, p. 6 (La. 12/4/02), 883 So.2d 927, 933). As evident in its reasoning and the trial transcript, the trial court's judgment herein rests upon its interpretation and

_____

[2] The legatees filed their motion for appeal in this court on July 18, 2016. Although their brief was due on September 12, 2016, we granted their request of an extension until September 22, 2016, which they timely met.

4

application of the form requirements set forth in La.Civ.Code art. 1577 to the four corners of the testament. Moreover, given that the facts are not in dispute, the issues presented for our review are clearly legal ones. Accordingly, our review begins with the law itself—our Civil Code articles governing the testamentary formalities for donations *mortis causa*.

Our Civil Code defines such a donation as "an act to take effect at the death of the donor by which he disposes of the whole or a part of his property." La.Civ.Code art. 1469. Prescribed therein, a person may only dispose of his property in this manner upon the proper execution of a last will or testament in a form "authorized by law": "A disposition mortis causa may be made only in the form of a testament authorized by law." La.Civ.Code art. 1570. The "[t]estamentary formalities serve as evidence of the requisite intent necessary to confect" a proper donation *mortis causa*. Kathryn Venturatos Lorio, 10 *La.Civ.Law Treatise, Successions and Donations*, § 12.1 (2d ed. 2016). These formal requirements were "designed to provide a simplified means for a testator to express his testamentary intent and to assure . . . that the instrument was intended to be his last will." *Succession of Porche*, 288 So.2d 27, 30 (La.1973).

"The purpose of prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud or deception, to afford a means of determining the will's authenticity, and to prevent substitution of some other writing in its place." *Succession of Hebert*, 101 So.3d at 135. Nevertheless, the "formalities prescribed for the execution of a testament must be observed or the testament is absolutely null[.]" La.Civ.Code art. 1573. This is true even when testamentary intent is clearly apparent and there are no allegations of fraud. S*ee Succession of Roussel*, 373 So.2d 155 (La.1979). As the Louisiana Supreme Court explains, courts in interpreting testaments

recognize the cardinal rule of construction and interpretation of wills, long applied in this State and generally in other jurisdictions, that the intention of the testator as expressed in the will must govern. But we are equally cognizant of the proposition that the intention to make a will, although clearly stated or proved, will be ineffectual unless the execution thereof complies with the statutory requirement.

A material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will. The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.

*Succession of Roussel*, 373 So.2d at 157.

Presently, our Civil Code prescribes two testamentary forms: "olographic and notarial." La.Civ.Code art. 1574. An olographic testament is one "entirely written, dated, and signed in the handwriting of the testator." La.Civ.Code art. 1575. Relevant herein, pursuant to La.Civ.Code art. 1576, a notarial testament is "one that is executed in accordance with the formalities of Article[] 1577[,]"[3] which require that the testament be written and dated as well as executed in the presence of a notary and two competent witnesses:

The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:

(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them

---

[3] The Revision Comments explain:

A notarial testament may be made in one of four ways. The notarial testament described in Article 1577 may be made only by a person who knows how to sign his name and how to read the testament as written, and is physically able to do both. If the testator lacks the physical ability to sign his name, the testament must be made in the manner described in Article 1578. If the testator's sight is impaired to the extent that he cannot read or if he is a person who does not know how to read, the testament must be made in the manner described in Article 1579. If the testator knows how to and is physically able to read braille, the testament may be made in the manner described in Article 1580. It is envisioned that most testators will use the basic notarial testament described in Article 1577.

La.Civ.Code art. 1574, Revision Comments—1997, comment (f).

6

that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.

(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

La.Civ.Code art. 1577.

Therefore, to properly confect a notarial testament, a testator "shall,"[4] "in the presence of a notary and two competent witnesses," (1) "declare or signify" that the written and dated "instrument is his testament," and (2) "sign his name at the end of the testament and on each other separate page." La.Civ.Code art. 1577(1). The notary and witnesses "shall" likewise, "in the presence of the testator and each other," sign a declaration in the exact words provided in the code or ones "substantially similar" thereto, attesting that (1) in their presence the testator had "declared or signified" that the instrument was his testament and had "signed it at the end and on each other separate page," and (2) they "subscribed" their names "in the presence of the testator and each other." La.Civ.Code art. 1577(2). These declarations are known as an attestation clause because in them the notary and the witnesses "are attesting to the observance of the formalities," *i.e.*, to the testator's declaration and his signature made and executed in the presence of all signing parties. *See* La.Civ.Code art. 1577, Revision Comments—1997, comment (b).[5] As

---

[4] As provided in La.R.S. 1:3, "The word 'shall' is mandatory and the word 'may' is permissive."

[5] The following is a sample form for a notarial testament:

STATE OF LOUISIANA
PARISH OF ORLEANS

such, the attestation clause has acquired a peculiar and appropriate meaning in the law, and it is construed and understood according to such peculiar and appropriate meaning.

Recently, in interpreting an attestation clause, the Louisiana Supreme Court explained:

> All of the formal requisites for the composition of our statutory will must be observed; otherwise the instrument is null and void. There must be an attestation clause, or clause of declaration. However, its form is not sacrosanct: It may follow the form suggested in the statute or use a form substantially similar thereto. The attestation clause is designed to evince that the facts and circumstances of the confection and execution of the

---

BE IT KNOWN that I, , Notary Public duly commissioned and qualified in and for the Parish of Orleans, State of Louisiana, have prepared the following testament of (TESTATOR) by his direction, he wishing to take advantage of the provisions of La. Civ. Code art. 1577:

I, (TESTATOR), do make this my last will and testament, revoking all previous wills and codicils.

*[dispositive provisions]*

IN TESTIMONY WHEREOF, the said (TESTATOR) signs his name hereto and on each page hereof in the presence of the undersigned notary public and the undersigned witnesses on this _____ day of _____ , Two-thousand .

_____
signed (TESTATOR)
WITNESSES:

In our presence, the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____.

_____
signed (WITNESS ONE)
_____
signed (WITNESS TWO)
_____
signed(NOTARY PUBLIC)

Lorio, *Id.* at § 12.4. Given the reliance on what the trial court described as computer-generated testaments, we strongly feel the public would benefit from the form provided by the treatise author, a noted member of the Louisiana State Law Institute Successions and Donations Committee upon whose recommendation La.Civ.Code art. 1577 was enacted in our Civil Code Revision of 1997, *see* 1997 La. Acts No. 1421, § 1 (enacted "On Recommendation of the Louisiana State Law Institute"). *See e.g., Succession of Toney*, 15-1928 (La.App. 1 Cir. 6/3/16), 195 So.3d 672, and *In re Succession of Seal*, 10-351 (La.App. 1 Cir. 9/10/10), 2010 WL 3527597, *writ denied*, 10-2294 (La. 1/28/11), 56 So.3d 964 (unpublished opinion).

instrument conform to the statutory requirements. In construing the attestation clause of this type of will, this court has been most liberal in its determination of whether the clause complies in form and whether it evidences the requisites to supply validity to the instrument. *See Succession of Eck*, 233 La. 764, 98 So.2d 181 [ (1957) ]; *Succession of Nourse*, 234 La. 691, 101 So.2d 204 [(1958)]. In *Succession of Thibodeaux*, 238 La. 791, 116 So.2d 525 [ (1959) ], we reiterated a basic principle of construction of wills, that the validity of a will is to be maintained if possible. In construing an attestation clause we will not require strict, technical, and pedantic compliance in form or in language. Rather, we will examine the clause to see whether there is substantial adherence to form and whether it shows facts and circumstances which evidence compliance with the formal requirements for testamentary validity.

*Succession of Morgan*, 257 La. 380, 386, 242 So.2d 551, 552–53 (1970). *See also* Kathryn Venturatos Lorio, [10] *La. Civ. L. Treatise, Successions and Donations* § 12:2 (2nd ed.) ("The statutes [former La.Rev.Stat. 9:2442] provided a sample attestation clause, but the form was not 'sacrosanct.' ").

Louisiana courts have held that the complete absence of an attestation clause will be fatal to the validity of a notarial will. *See In re Succession of Richardson*, 05–0552 (La.App. 1 Cir. 3/24/06), 934 So.2d 749, *writ denied*, 06–0896 (La.6/2/06), 929 So.2d 1265; *Succession of English*, 508 So.2d 631, 633 (La.App. 2 Cir.1987). However, courts have also held the attestation clause itself must only be "substantially similar" to the attestation clause in Art. 1577, such that minor deviations in form with regard to the date in the attestation clause do not render the testament invalid in the absence of any indication of fraud. *See In re Succession of Hebert*, 12–281 (La.App. 3 Cir. 10/3/12), 101 So.3d 131; *Succession of Armstrong*, 93–2385 (La.App. 4 Cir. 4/28/94), 636 So.2d 1109, *writ denied*, 94–1370 (La.9/16/94), 642 So.2d 196*; cf. Succession of Bel*, 377 So.2d 1380 (La.App. 4th Cir.1979)(statutory will that contained a date in the attestation clause but not in the will itself was nevertheless valid).

*In re Succession of Holbrook*, 13-1181, pp. 9-10 (La. 1/28/14), 144 So.3d 845, 851-52.

Though clearly the wording of the codal attestation clause is not sacrosanct, the provisions of La.Civ.Code art. 1577, along with the jurisprudence interpreting those provisions, still require substantial similarity between the form employed by the notary and witnesses in their attestations and the form prescribed in the article.

La.Civ.Code art. 1577; *Succession of Holbrook*, 144 So.3d 845. Therefore, when an attestation clause is challenged, a court must first examine its form to determine whether it is the same or "substantially similar" to that contained in La.Civ.Code art. 1577. Lack of substantial similarity to the codal form constitutes a substantive defect or material deviation fatal to the testament's validity. *See Succession of Toney*, 195 So.3d 672.[6]

After examining the notary's attestation clause herein, the trial court found it lacked the substantial similarity required. Our study of the language employed by the notary likewise reveals a dissimilarity fatal to the overall validity of the testament.

The clause at issue appears as follows:

STATE OF LOUISIANA
COUNTY OF RAPIDES

Subscribed, sworn to and acknowledged before me by John Robert Biscamp, the Testator; and subscribed and sworn to before me by Lynette Poag [handwritten] and Arlis W. Poag [handwritten] witnesses, this 22nd [handwritten] day of December , 2010 [handwritten].

                    Nita F. James #18281 [handwritten]
                    Notary public, or other officer
                    authorized to take and certify
                    acknowledgements and administer oaths

Comparing the above language with that prescribed in La.Civ.Code art. 1577, the trial court found error in the failure of the attestation clause to expressly state that Biscamp declared the testament to be his Last Will and Testament to the notary in the presence of the witnesses. We agree as this purported attestation clause, apart from acknowledging the testator and witnesses by name, makes no mention of the testament and, most importantly, contains no statement attesting to

---

[6] By order dated December 16, 2016, the Louisiana Supreme Court has granted writ in this matter for summary disposition. *See Succession of Toney*, 16-1534 (La. 12/16/16), 2016 WL 7638405.

Biscamp's declaration or signification, made in the presence of both the notary and the witnesses, that the instrument was his testament.

Rather than an attestation, the clause containing the standard legalese—"subscribed, sworn to and acknowledged"—is merely a "general notarization of the will," nearly identical, with the exception of the names of the testators and witnesses, to those contained in wills recently nullified by the first circuit in *Succession of Toney*, 195 So.3d at 675. As the trial court herein and the first circuit have noted, "[w]here a will is merely notarized, without a declaration signed by the notary, the requirements of Article 1577 are not met." *Id.* Simply put, the formal requirements of La.Civ.Code art. 1577 require more than simple notarization; they require the notary's express declaration—either verbatim or in "substantially similar" language to that supplied by the article itself—attesting to the testator's declaration and signification of his testament made in the presence of the notary and two competent witnesses.

While we acknowledge there have been no allegations of fraud and the testament undeniably does express the intent of the testator, the provisions of La.Civ.Code art. 1573 nevertheless bind us. It is well documented that Article 1573 has required, since the enactment of its predecessor in 1870, adherence to the formalities prescribed for the execution of a testament under penalty of nullification. *See* La.Civ.Code art. 1595 (1870) ("The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void.") Moreover, despite the legatees' assertion that the Louisiana Supreme Court has, as a matter of public policy, advanced a liberal construction and application of the article so to maintain the validity of the testament if at all possible, that same court still requires "'substantial adherence to form and . . . compliance with the formal requirements

11

for testamentary validity.'" *Succession of Holbrook*, 144 So.3d at 852 (quoting *Succession of Morgan*, 257 La. 380, 386, 242 So.2d 551, 552-53 (1970)). In accord therewith, our courts have strived to maintain a testament's validity "as long as it is in substantial compliance with the statute." *Succession of Guezuraga*, 512 So.2d 366, 368 (La.1987).

Further, though the notarial testament form was only added to the Civil Code in the Revision of 1997 through the enactment of La.Civ.Code art. 1577, *see* 1997 La. Acts No. 1421, § 1, the comments to the article clearly provide it merely "reproduces the substance" of former La.R.S. 9:2442, which, in turn, set forth the form requirements for a statutory testament, *i.e.*, a writing executed in the presence of a notary and two witnesses. Since its enactment in 1952, La.R.S. 9:2442 required "a declaration" in the "form [provided] or a form substantially similar thereto" signed by the notary and both witnesses attesting that the testator "signed … and declared …, in [their] presence [the testament] to be his last will and testament."[7] Historically, this testamentary form, which originated from the

---

[7] In its entirety, 1952 La. Acts No. 66, § 1 provided:

> In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if in writing (whether typewritten, printed, mimeographed, or written in any other manner), and signed by the testator in the presence of a notary public and two witnesses in the following manner:
>
> (1) Testator. In the presence of the notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign each separate sheet of the instrument.
>
> (2) Notary public and witnesses. The notary and both witnesses must sign at the end of the will.
>
>> (a) In the presence of the testator, and
>>
>> (b) In the presence of each other.
>
> (3) The foregoing facts shall be evidenced in writing above the signatures of the notary public and witnesses and the testator at the end of the will. Such declaration may be in the following form or a form substantially similar thereto:
>
>> (a) Signed (on each page) and declared by testator above named, in our presence to be his last will and testament, and in the

12

English Statute of Frauds of 1677, was adopted from the common-law states to purposefully "evade the strict standards of form required of civil law testaments." *See Succession of Hebert*, 101 So.3d at 135. The legislature nonetheless has consistently maintained the attestation requirement of both the notary and the witnesses since 1952 and throughout its various amendments to the statutory requirements.[8] Similarly, our courts have long required that an attestation clause, to survive an attack on form, must contain some type of acknowledgement that the instrument was executed by the testator in the presence of the notary and witnesses "after some word or act which impelled their understanding that it was 'to be' [his] testament." *See Succession of Morgan*, 242 So.2d at 553. A simple notarization, without some express acknowledgment of the testator's declaration to all the signatories that it was, in fact, his testament, has not, and therefore will not, suffice as an attestation clause.

Accordingly, it logically follows that the notarial testament herein, with its generalized notarization clause, fails to contain an attestation by the notary identical or substantially similar to the codal form in contravention of the mandates of La.Civ.Code art. 1577. Because the notarial testament at issue herein does not substantially comply with the formal requirements of La.Civ.Code art. 1577, namely due to its lack of a statutorily acceptable attestation clause, the testament is, by operation of La.Civ.Code art. 1573, "absolutely null."

---

> presence of the testator and each other we have hereunto subscribed our names on this . . . day of ....... 19...

*See Succession of Thibodeaux*, 238 La. 791, 793, n.1, 116 So.2d 525, 525, n. 1 (1959).

[8] *See* 1964 La. Acts No. 123, § 1; 1974 La. Acts No. 264, § 1; 1976 La. Acts No. 333, § 1; 1980 La. Acts No. 744, § 1; 1997 La. Acts No. 1421, § 1 (repealed and reproduced in La.Civ.Code art. 1577).

**DECREE**

For the reasons discussed above, we affirm the trial court's judgment, which nullified the notarial testament.

**AFFIRMED.**