I .BROWN, C.J.
Patricia Williams Sampognaro died on December 18, 2002. Shortly before her death, on December 2, 2002, she executed a notarial testament, pursuant to La. C.C. art. 1577, leaving her entire estate to her youngest child, Thomas Craig Sampogna-ro. The trial court invalidated this will because the signatures of the two witnesses and notary were above, rather than below, the attestation clause. The testatrix signed both above and below the attestation clause and at the bottom of each page of the two page testament. We reverse and remand for further proceedings.[1]

Discussion

There is a paramount presumption that a testament is valid. Succession of Boisseau, 33,861 (La.App.2d Cir.09/27/00), 768 So.2d 743, writ denied, 00-2993 (La.12/15/00), 777 So.2d 1233. The intent of a testator controls the interpretation of her will. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. La. C.C. art. 1611; Succession of Hawsey, 02 0285 (La.App. 3rd Cir.10/30/02), 829 So.2d 1092. Under the provisions of La. C.C. art. 1577, the requirements of form for a notarial testament are as follows:
The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page. (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: “In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this_ day of__,_”
The revision comments to La. C.C. art. 1577 state in part:
The testator is disposing of property, appointing an executor or making other *309 decisions in the body of the testament itself. He need only sign at the end of the dispositive, appointive or directive provisions. The witnesses and the notary are attesting to the observance of the formalities; they need only sign the declaration. (Emphasis added).
The December 2002 testament clearly evinces the testatrix’s signatures at the end of the dispositive provisions of the two page testament. The essential question herein is whether the witnesses and notary attested to the “observance of the formalities” when they signed above the attestation clause rather than below.
In Porche v. Mouch, 288 So.2d 27 (La.1973), the Louisiana Supreme Court observed that the purpose of the attestation clause is primarily to evidence, at the time of the will’s execution, that the statutory formalities were satisfied; when the instrument as a whole shows that the | informalities were satisfied, “technical variations” in the attestation clause should not defeat the dispositive portions of an otherwise valid will. The court also noted that an attestation clause is not self-proving; witnesses in person or by affidavit must be produced at the probate to prove the will. The principal function of the witnesses in the attestation requirement is to supply a source of proof that the testator signed what he formally indicated to be his testament.
In Succession of Guezuraga, 512 So.2d 366 (La.1987), the Louisiana Supreme Court observed that in accordance with the legislative intent, courts liberally construed and applied the statutory will statute, maintaining the validity of a will if at all possible, as long as the will was in substantial compliance with the statute. In a similar vein in Succession of Boyd, 306 So.2d 687 (La.1975), the supreme court stated that there is no law preventing courts from hearing testimony and entertaining evidence to throw light upon an obscure date and remove all doubt, uncertainty, or ambiguity concerning an uncertain date.
The first page of the December testament contains the dispositive provisions, is dated December 2, 2002, and is signed at the bottom of the page by the testatrix. At the top of the second page is the following language:
THUS DONE AND PASSED before me, Notary Public, and the undersigned competent witnesses this 2 day of December, 2002, in Monroe, Ouachita Parish, Louisiana.
Underneath the above-quoted sentence is the signature of two witnesses, the signature of the testatrix (her second signature on the will), |4and the signature of the notary public. The attestation clause follows the four signatures and reads:
The above and forgoing instrument was read aloud by the undersigned notary, in the presence of the TESTATRIX and to the above signed and undersigned witnesses, and each other, such reading having been followed on copies of the Will by the undersigned and above signed witnesses, the TESTATRIX declared that he [sic] heard the said reading and she also declared this instrument to be his [sic] last will and testament, and in our presence she signed and dated the instrument at the end and on each other separate page and, following that, we, the said witnesses and Notary Public, each did sign the instrument at the end thereof, in the presence of said TESTATRIX, and in the presence of each other, all on the 2 day of December, 2002; and further, in the presence of said TESTATRIX, and we have hereunto subscribed our names on the said date at Monroe, Oua- *310 chita Parish, Louisiana, on this £ day of December, 2002.
Immediately following the attestation clause, and on the right-hand side of the page, is the signature of the testatrix (her third signature on the will). Finally, the will again bears the date of December 2, 2002, at the bottom of the second page, and immediately next to the date in the bottom center of the second page is the signature of testatrix (her fourth signature on the will).
The testatrix signed her name at the end of the testament and on each of the two pages. Furthermore, the will was signed by two witnesses and a notary public, and contained an attestation clause, the substance of which was substantially similar' to the wording found in La. C.C. art. 1577(2). The will’s only doubt or ambiguity is due to the witnesses and notary signatures above, rather than below, the attestation clause. The obvious problem is the possibility that the attestation clause could have been added after the witnesses and notary had signed immediately below the dispositive portions |sof the will. If that were the case, then they would not actually be attesting to the observance of the formalities.
We believe that this uncertainty, like the uncertain date present in Boyd, supra, is the type of doubt upon which a court may hear testimony and entertain evidence. As noted in Porche, supra, the attestation clause is not self-proving, and witnesses are necessary to prove the will. Furthermore, pursuant to a stipulated judgment, the issue of any undue influence has been waived, and there is no allegation of fraud. We also note that the testatrix did sign immediately after the attestation clause, thus affirmatively showing that she was aware of the witnesses’ attestation on December 2, 2002, the same date the witnesses, notary, and testatrix signed the instrument. Finally, we observe that even when a notarial testament is prepared in full compliance with the form requirements of La. C.C. art. 1577, doubt can arise when the dispositive provisions of the will and the testator’s signature thereto are on a separate page from the attestation clause and its signatures. The fact that doubt with respect to the attestation clause can arise even when the form requirements are strictly followed indicates that evidence should be allowed to cure such doubts, rather than void the testament.

Conclusion

For the reasons set forth above, the trial court’s judgment is hereby REVERSED, and the matter is REMANDED to the trial court for further proceedings. Costs are assessed to appellee, MARY PAMELA SAMPOGNARO EUBANKS.
REVERSED AND REMANDED.

. On January 10, 2003, decedent’s daughter, Mary Pamela Sampognaro Eubanks, filed a petition to probate a testament executed by Mrs. Sampognaro on November 6, 2002. The testament bequeathed the entirety of Mrs. Sampognaro's estate to her four children, Russell Eric Sampognaro, Maiy Pamela Sam-pognaro Eubanks, James Kevin Sampognaro, and Thomas Craig Sampognaro, or their descendants, share and share alike.
On January 15, 2003, decedent’s son, Thomas Craig Sampognaro, filed a petition to annul the November 2002, will on the grounds that Mrs. Sampognaro had subsequently executed a testament on December 2, 2002. That same day, he filed a petition to probate the December 2002, testament, executed just over two weeks before Mrs. Sam-pognaro's death. The December testament left the entirety of Mrs. Sampognaro’s estate to Thomas. In April 2003, Mary Pamela answered Thomas’ petition to annul the November testament; she denied the allegations of his petition and, further answering, alleged that the December testament was the product of undue influence. The trial court’s judgment which invalidated this December will included a stipulation by the parties that there was no undue influence.