COX, J.
Appellant, Bobby Ray Rogers, appeals a final judgment of the trial court finding that the last will and testaments of the decedents, Ulysses Rogers ("Mr. Rogers") and Lizzie Mae Crane Rogers ("Mrs. Rogers"), were in valid form and should be filed, probated, and executed in accordance with the law. For the following reasons, we respectfully reverse the ruling of the trial court.
FACTS
Mr. Rogers died on August 18, 2011, and his wife, Mrs. Rogers, died on September 7, 2015. They were survived by ten children, including the appellant, Bobby Ray Rogers ("Appellant"). Mr. and Mrs. Rogers each left a typed purported will, both signed by a notary and two witnesses, and dated December 10, 1992.
In his will, Mr. Rogers bequeathed to his wife a usufruct for life over all of his property. He bequeathed the remainder of his property to his children in equal proportions, subject to conditions. Mr. Rogers stated that the portion bequeathed to Appellant shall be subject to a usufruct for life to Joycetta Rogers Bradford and Barbaraetta Rogers Dunn, two of Appellant's sisters. The will states that the usufruct "shall be joint and successive, for the life of whoever of them shall li[v]e longest." Next, the bequest to all of his children is subject to the following:
None of my children or their descendants shall sell or lease, with the exception of sale of mineral rights or mineral leases, any of the immovable property or undivided interest in same acquired from me hereunder without first offering the same to my other children on the same terms and conditions as may be offered by a bonafide third purchaser.
Mr. Rogers' will declared that any sale or lease made in violation of this provision shall be null and void. He also stated that the provision "shall be effective for the maximum period of time allowed by Louisiana law or ten (10) years after my death, whichever period is lesser." Mrs. Rogers' will contains the same language and conditions.
Mr. and Mrs. Rogers' wills also contain the same attestation clause, with the exception of their respective names.[1] The attestation clause reads as follows:
In witness whereof, I have signed this, my Last Will and Testament, in the presence of the witnesses hereinafter named and undersigned.
/s/ Ulysses Rogers
Signed on each page and declared by Ulysses Rogers, executor above named, in our presence to be his Last Will and Testament, and in the presence of the testator and each other we have hereunto subscribed our names on this 10th day of December, 1992.
/s/ Ulysses Rogers, Glenda Madden (witness), and Sheila R. Delk (witness)
*1212 BEFORE ME, the undersigned authority, personally came and appeared ULYSSES ROGERS, who declared to me that the foregoing instrument is his Last Will and Testament. SWORN TO AND SUBSCRIBED before me on this 10th day of December, 1992.
/s/ Jonathan M. Stewart
On January 12, 2016, Appellant filed a petition requesting the trial court to order Jonathan Stewart, the attorney for his nine brothers and sisters ("Appellees"), to produce and file the original wills of his parents. Appellant claimed that both wills were null and void due to the invalid attestation clause and the double disposition of the usufruct.
On January 13, 2016, the trial court ordered Jonathan Stewart to produce and file the original wills so that the court could determine their validity.
On March 28, 2016, Appellant filed a motion contesting the validity of the wills. After considering the pleadings filed, the original wills, and the memoranda and arguments of counsel, the trial court found both wills to be valid and executed according to law. On June 29, 2016, Appellant filed a motion for devolutive appeal with this Court setting forth the following assignments of error: (1) the trial court erred in finding the attestation clauses in the statutory wills substantially complied with La. R.S. 9:2442 ; (2) the trial court erred in refusing to find an impermissible double disposition of a usufruct; (3) the trial court erred in failing to find that the double usufructs constituted a prohibited substitution; and, (4) the trial court erred in failing to strike the clause prohibiting free alienation by the heirs of their inheritance.
LAW
In a will contest, an appellate court must accord great weight to the factual findings of the trial court and cannot disturb such findings in the absence of manifest error. Matter of Succession of Biscamp , 2016-673 (La. App. 3 Cir. 2/1/17), 211 So.3d 472. "However, the trial court's interpretation and application of legal principles and statutory provisions are legal findings subject to de novo review." Id.
A disposition mortis causa may be made only in the form of a testament authorized by law. La. C. C. art. 1570. The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. C. C. art. 1573. "The purpose of prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud or deception, to afford a means of determining the will's authenticity, and to prevent substitution of some other writing in its place." In re Succession of Hebert , 2012-281 (La. App. 3 Cir. 10/3/12), 101 So.3d 131.
A notarial testament is one that is executed in accordance with the formalities of Articles 1577 through 1580.1 of the Louisiana Civil Code. La. C.C. art. 1576. At the time both wills were executed, La. R.S. 9:2442 was controlling, but has since been repealed and reproduced in La. C.C. art. 1577. La. R.S. 9:2442 stated, in pertinent part, the following:
The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "The testator has signed this *1213 will at the end and on each other separate page, and has declared or signified in our presence that it is his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _______, 19_____."
The word "shall" is mandatory. La. R.S. 1:3.
There is a presumption in favor of the validity of a testament, but proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. In re Succession of Holbrook , 2013-1181 (La. 1/28/14), 144 So.3d 845. "Louisiana courts have held statutory and notarial wills invalid when they contain material deviations from form requirements, even in the absence of any indication of fraud." Successions of Toney , 2016-1534 (La. 5/3/17), 226 So.3d 397, 2017 WL 1709827, reh'g denied (June 29, 2017).
Regarding the attestation clause requirement, the Louisiana Supreme Court has stated:
There must be an attestation clause, or clause of declaration. However, its form is not sacrosanct: It may follow the form suggested in the statute or use a form substantially similar thereto. The attestation clause is designed to evince that the facts and circumstances of the confection and execution of the instrument conform to the statutory requirements. In construing the attestation clause of this type of will, this court has been most liberal in its determination of whether the clause complies in form and whether it evidences the requisites to supply validity to the instrument.
Succession of Morgan , 257 La. 380, 242 So.2d 551 (1970). There are three elements required for a valid attestation clause: the notary and witnesses are required to declare (1) the testator signed the will at its end and on each separate page, (2) the testator declared in the presence of the notary and witnesses that the instrument was his will, and (3) in the presence of the testator and each other, the notary and witnesses signed their names on a specified date. Succession of Brown , 458 So.2d 140 (La. App. 1 Cir. 1984).
DISCUSSION
Based on the Louisiana Supreme Court's recent decision in Successions of Toney , supra , we find both wills to be invalid. Although Appellant sets forth four assignments of error, we will only address the first assignment of error since the absolute nullity of each will renders the remaining assignments moot.
We find that the clauses contained in each will, even considered in aggregate, are not substantially similar to the sample attestation clause contained in La. R.S. 9:2442. Thus, we respectfully reverse the ruling of the trial court.
The first element of a valid attestation clause requires the notary and witnesses to declare that the testator signed the will at its end and on each separate page. Although the last page of each will states it was "Signed on each page and declared... in our presence [the two witnesses] to be his/her Last Will and Testament," it does not declare that the notary viewed the will being signed at the end and on each separate page.
The second element requires the testator to declare in the presence of the notary and two witnesses that the instrument was his/her will. This requirement appears to be met since the two witnesses and the notary declared that each party "personally came and appeared... who declared to me that the foregoing instrument is [his/her] Last Will and Testament."
The final element of La. R.S. 9:2442 requires the notary and two witnesses to sign their names on a specified date in the *1214 presence of the testator and each other. Although the witnesses declared "in the presence of the [testator/testatrix] and each other we have hereunto subscribed our names," the witnesses do not mention signing the will in the presence of the notary. Likewise, the notary does not mention signing the will in the presence of the witnesses. Most significant, in Mrs. Rogers' will, is the fact that the witnesses signed on December 10, 1992, but it appears the notary originally signed on December 18, 1992, and then changed that number to a 10 to coincide with the date the witnesses originally signed. This change shows that the will may not have been signed in the presence of both the witnesses and notary, but rather was done on two separate occasions.
As stated in Successions of Toney, supra , "an attestation clause is defective when the clause does not indicate the notary and witnesses signed in the presence of the testator and each other." The wills' attestation clauses state that the testator/testatrix signed the will in the presence of the witnesses and declared the instrument to be his/her last will and testament. They also state that the testator/testatrix signed the will in the presence of the notary and declared the instrument to be his/her last will and testament. However, neither clause states that the testator/testatrix signed the will in the presence of both the notary and two witnesses.
Furthermore, the "sworn to and subscribed" portion appears as a general notarization of the will, rather than an attestation of the notary because the clause does not clearly state that the necessary signatures were signed in the presence of all persons, including the notary; it merely states the testator/testatrix declared the instrument to be his/her will. Additionally, the notary portion of the attestation clause does not declare that the testator/testatrix signed the will at the end and on each separate page, whereas the witnesses' portion does.
Louisiana courts "have held statutory and notarial wills invalid when they contain material deviations from form requirements, even in the absence of any indication of fraud." Successions of Toney, supra . Although there does not appear to be any indication of fraud, we find the deviation from the required testamentary form in this case is significant and material. As stated in In re Hendricks , 2008-1914 (La. App. 1 Cir. 9/23/09), 28 So.3d 1057, writ not cons. , 2010-0480 (La. 3/26/10), 29 So.3d 1256 :
The fact that there is no fraud, or even a suggestion or intimation of it, will not justify the courts in departing from the codal requirements, even to bring about justice in the particular instance, since any material relaxation of the codal rule will open up a fruitful field for fraud, substitution, and imposition.
We are aware that the trial court did not have the benefit of the Louisiana Supreme Court's opinion in Successions of Toney, supra , at the time it rendered this judgment. We value its interpretation of the law, but must follow the Louisiana Supreme Court's opinion and reverse the trial court's decision. The purpose of the requirements set forth in La. R.S. 9:2442 is to guard against fraud. When there is no proof within the four corners of the instrument that both the witnesses and notary were present, along with the testator/testatrix, during the declaration and signing of the wills, it creates room for fraud. All parties-the witnesses, notary, and testator/testatrix-are required to be present during the declaration and signing of the will. It was not the intent of the Legislature to have the testator/testatrix declare and sign the will in the presence of the witnesses and then have it notarized on a separate occasion, which appears to be the *1215 situation in this case. Although the testator/testatrix did declare the instrument to be his/her last will and testament to the notary, there is no indication that the witnesses were present during this time. Additionally, the notary did not declare that the testator/testatrix signed the will at the end and on each other separate page. Again, the noticeable date change by the notary in Mrs. Rogers' will is of concern.
Nowhere on the final page of the wills is it indicated that the notary and witnesses signed in the presence of the testator/testatrix and each other. Therefore, we find that the attestation clauses in Mr. and Mrs. Rogers' wills do not substantially comply with La. R.S. 9:2442. Because there was a material deviation from the codal requirements, we declare both wills to be invalid.
CONCLUSION
Based on the foregoing reasons, we respectfully reverse the ruling of the trial court and find the wills of Mr. and Mrs. Rogers to be invalid. All costs of this proceeding are assessed to Appellees.
REVERSED.
BLEICH, J. (Pro Tempore ), concurs with written reasons.
STONE, J., concurs with the majority for the reasons assigned by J. Bleich.
WILLIAMS, J., dissents with written reasons.
BLEICH (Pro Tempore ), J., concurring.
Erosion shall occur in precisely adopted law if we were to uphold the validity of the documents proffered in this case as "wills." Practitioners of the law, and more importantly the public, will be misled into thinking that exceptions to the rule of law are permissible, are the norm, and will be overlooked. Thereafter, the rule of law, which provides stability and certainty, will disintegrate into meaningless, suggestive words rather than certain, reliable, clearly written law. Concurring in the result of the majority opinion, these observations are added.
Notwithstanding that the consideration in this case involves examination of a former statute, now replaced, the dangers of failure to precisely comply with the provisions of the new codal article remain the same.[2] Consideration of formality in the analysis of this case does not stem from rudimentary or baseless routine. This case is one governed by mandatory edicts set in place for the specific reason of allowing members of the public to execute a *1216 document of finality with the peace of mind to which they are entitled. The statutory language contains affirmative, unambiguous duties and is not simply a recitation of bland, parenthetical or optional suggestions.[2] The required formality of a meaningful, effective attestation clause has significant substantive purposes. The mandatory duty of the notary public in this setting is related to a major evidentiary consideration, as proper compliance with the law is intended to confect a "self-proving" document. Testimony by those who were present cannot be adduced, either orally or in writing, to prove that a fatally defective document has now been "resurrected." The testator is classically "unavailable."[4] The other participants may also be deceased, absent, or possessed of fading memory or bias. Therefore, our legislature chose specific mandatory requirements for the creations of a valid will.[5]
Without strict compliance with the requirements for will preparation, including insertion of a valid attestation clause, unnecessary, protracted, and widespread litigation would be our norm. In will preparation, including a valid attestation clause, the declaration of a notary public is far more momentous than just a "simple notarization" of only one signature. The notary public is affirming, while assuming the role of a witness to the acts of others, that he saw the testator and witnesses perform their required functions. The notary public, with an arguably more important role than the witnesses to a will, is called upon by law to state that he/she saw three other people sign the most formal of documents. This might be referenced as a "required four." Four persons-the testator, two witnesses, and the notary public-must assemble together, sign as required, and observe the actions of the others.
It is meaningless to speculate what could have occurred outside of the presence of the notary public. That consideration is rendered moot with the examination of a proper attestation clause. Thus, formalities require there be no doubt of compliance with the statutory attestation clause for the creation of a valid last will and testament. Under the facts of this case, the only necessary considerations are the examination of the proffered documents in comparison to the clearly written statute. In the instant case, unfortunately, *1217 the notary public, as confirmed by the language of the subject documents, did not cause those documents to be properly and effectively signed.
As just one example of a defect in the subject documents, here there is no statement of the notary public that the alleged witnesses signed the document. While there are witness signatures ostensibly present, one cannot know with required certainty who placed those signatures on the subject documents.[6] No internal clarity exists confirming that either Glenda Madden or Shelia R. Delk, the purported witnesses, are the persons whose signatures appear on the documents. The reason for this conclusion is most glaring: there is no confirmation of the existence of these people or their signatures due to the missing confirmation of such from the notary public.
Another defect concerns the placement of the testator's signature. The statute provides that the "testator ... shall sign his name ... at the end of the will and on each other separate page." However, here, the fact that the testator signed at the end of the will comes only from the notary public, not the witnesses; and, while the witnesses confirm each page was signed, the notary public does not.
The most troubling defect is the disregard of the statutory requirement of attesting to "presence." The statute requires that "[i]n the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar." Here the testator's attestation clause states he signed in the presence of the witnesses; the witnesses' attestation clause states that the testator signed in their presence, and they signed in the presence of the testator; and, notary public's attestation clause states the testator subscribed the document before him. Nowhere in the subject documents does a statement appear that could be considered substantially similar to that which is required by law.
There exists a jurisprudential yearning to maintain the validity of wills. This presumption of validity is well established, consistent and faithfully followed. See Successions of Toney , 2016-1534 (La. 05/03/17), 226 So.3d 397, 2017 WL 1709827, reh'g denied (La. 06/29/17); Succession of Holbrook , 2013-1181 (La. 1/28/14), 144 So.3d 845 ; Bernard v. Francez , 166 La. 487, 117 So. 565 (La. 1928) ; Succession of Dawson , 51,005 (La. App. 2 Cir. 11/16/16), 210 So.3d 421, 424. Here, there only theoretically available procedural option for this court to have implemented to ascertain if the subject documents could be "revived" as valid wills, might have been to remand the case to the trial court to determine if the "required four" did actually all properly sign the appropriate language in the presence of one another. Cf. In re Succession of Sampognaro , 38,112 (La. App. 2 Cir. 1/28/04), 865 So.2d 307 (distinguishable because, here, the subject documents lack valid attestation clauses). The futility and impropriety of examining the subject documents outside the "four corners" to find a valid attestation clause, even under former procedural standards, is rejected in Succession of English , 508 So.2d 631 (La. App. 2 Cir. 1987). In English at 632,, the court, with compelling *1218 clarity, emphasized the distinction between the requirement of a correctly confected attestation clause and an attempt to revive a defective document by probate affidavit:
There must be an attestation clause, or clause of declaration, but its form is not sacrosanct. The attestation clause is designed to evidence that the facts and circumstances of the confection and execution of the instrument conform to the statutory requirements. Where there is no formal attestation clause the dispositive provisions of the testament will be scrutinized in order to ascertain whether the instrument as a whole complies with the statutory requirements. The attestation clause is not self-proving and witnesses by affidavit or in person must be produced in accordance with La. C.C.P. art. 2887. Succession of Porche , 288 So.2d 27 (La. 1973). The court in Porche supra , reasoned "the purpose of the attestation clause is primarily to evidence at the time the will was executed, that the statutory formalities ... had been satisfied. The affidavit used to probate the will cannot "cure" the total lack of an attestation clause . Such an interpretation would render meaningless the mandatory requirements of the statute and do violence to the jurisprudentially recognized purpose of the attestation clause. The purpose of the clause is to provide evidence that the mandatory formalities have been complied with and La. C.C.P. art. 2887 is a source of proof that the testator signed what he formally indicated to be his testament. To hold the probate affidavit can supply a complete lack of an attestation clause ... or to substantially comply with the statute, would be to judicially rewrite the stature and carve out an exception with its language does not support. (Emphasis supplied; some internal citations omitted).
As stated in English , to "recover" substantial compliance in the instant case would be akin to this court's creating a legislative amendment. This court's potential creation of a legislative exception is contrary to public policy.
Silence, or absence of words, can sometimes be quite loud and deafening. Missing language in the subject documents indicates patent deficiencies. The absence of the "attestation clause" in the subject documents could easily allow the court to logically conclude that the notary public was actually not present at the signing. Without clearly stating the notary public was "present," via the attestation clause, could lead to the inference that the notary public was indeed absent. In the subject documents, the notary public does not state that the testator signed each page. The only way that this court can be assured of such signing on each page by the testator is by inclusion of a proper attestation clause.
The verbiage used by the notary public, not containing any reference to the witnesses, could lead to the inquiry that the witnesses may not have actually seen the testator sign the documents. Stated differently, it could be inferred from the document itself that the notary public is stating that the documents were not witnessed at all. They typewritten language of the notary public states: "declared to me that the foregoing instrument is his last will and testament." It does not include the words "that the testator signed each page in the presence of the witnesses."
Further, the witnesses' purported "attestation clause" does not say "the entire instrument was 'subscribed before' the notary." The words "each other" may be construed to mean that only the testator signed-again, without the notary public present. It can only be known, with minimally mandated certainty, that the "required *1219 four" were present together and properly signing the document, with the use of the required attestation clause.
Summarizing the defective language, this court does not and cannot know from the pages of the documents whether: the signatures of the witnesses are genuine; the witnesses saw the testator sign each page; the testator saw the signatures of the witnesses; the notary public saw the witnesses sign; or, the witnesses saw the notary public sign.[7] The absence of any one of these required statements would be a problem. In aggregation, these errors create a fatally flawed document, incapable of resurrection, which cannot be decreed a valid will.
Louisiana R.S. 9:2442 does not create formality just for its sake. For the subject documents to be validly declared wills, there must be internal clarity of compliance with the pertinent statute. It must appear within the respective document , and no other place , that the testator, the witnesses, and the Notary Public-the "required four"-were assembled together, and properly executed the documents together , at the same time, and in the presence of each other. The lack of mandatory language within the ineffectual "attestation clauses" of the subject documents evidences these four persons were not together as mandated.
The purported "will" are facially defective. Multiple reasons for this conclusion lead to the inescapable conclusion that the trial court's judgment is required to be reversed.
WILLIAMS, J., dissents.
I respectfully dissent. The record and the applicable law demonstrate that the attestation clause of each will substantially complies with the statute.
For a statutory will to be valid as to form (1) the testator must declare in the presence of a notary and two witnesses that the instrument is his testament, (2) the testator must sign his name at the end of the testament and on each separate page, and (3) the notary and two witnesses must sign a declaration in the presence of each other and the testator attesting that the formalities of La. R.S. 9:2442 (currently La. C.C. art. 1577 ) have been followed. Succession of Smith , 49,118 (La. App. 2 Cir. 8/13/14), 146 So.3d 917.
Although a valid statutory will must have an attestation clause, its form is not sacrosanct. The attestation clause may use the form suggested in the statute, or use language substantially similar thereto. Courts liberally construe and apply the provisions of Section 2442, maintaining the validity of the will if at all possible, as long as the will is in substantial compliance with the statute. Succession of Holbrook , 2013-1181 (La. 1/28/14), 144 So.3d 845 ; Succession of Guezuraga , 512 So.2d 366 (La. 1987). Section 2442 provided that in the presence of the testator and each other, the notary and witnesses shall sign the following, or a substantially similar, declaration: "The testator has signed this will at the end and on each other separate page and has declared or signified in our presence that it is his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names" on a certain date.
Here, the attestation clause of each will states: "Signed on each page and declared by [the testator] in our presence to be his Last Will and Testament, and in the *1220 presence of the testator and each other we have hereunto subscribed our names" on December 10, 1992. The signatures of the witnesses follow this declaration. The notary's signature follows additional language stating that the testator personally appeared and declared the instrument was his will.
The majority has determined that the attestation clauses fail to state that the witnesses and notary saw the testator sign the will while in each other's presence. However, in reading the attestation language as a whole, the clause declares that the testator signed each page in the presence of the witnesses and that the entire instrument was "subscribed before" the notary, indicating that the testator, witnesses and notary all signed while together on December 10, 1992. Additionally, the record does not support the majority's accusation that the notary actually signed Mrs. Rogers' will on December 18th and then backdated the instrument.
The situation in this case can be distinguished from that in the recent supreme court case of Successions of Toney , 2016-1534 (La. 5/3/17), 226 So.3d 397, 2017 WL 1709827. Thus, contrary to the majority's assertion, Toney does not require reversal in this case. In Toney , the court found that the will form was invalid because the testator initialed the other pages of the will and the attestation language did not show that the testator declared the instrument was his will before the notary. Here, in contrast, the testator signed each page of the will and the attestation clause specifically states that the testator declared that the instrument was his will before the notary.
Consequently, the attestation clause at issue confirms that the testator declared that the instrument was his will and signed in the presence of the witnesses and notary on the stated date. Although the attestation clause is not identical to the statutory declaration that the testator signed the will "at the end," the instrument itself demonstrates that the testator signed at the end and the failure of the clause to state this obvious fact does not support a finding that the will is invalid. See Succession of Dawson , 51,005 (La. App. 2 Cir. 11/16/16), 210 So.3d 421. Further, Section 2442 required only that the language of the declaration be "substantially similar" to the language expressed in the statute. Based upon the applicable law, I conclude that the language of the attestation clause in each will substantially complies with the requirements of Section 2442.
Therefore, I would affirm the judgment finding that the wills are valid and address the remaining issues raised on appeal that were pretermitted by the majority opinion.

For purposes of this opinion, we will refer to Mr. Rogers' will.

Louisiana C.C. art. 1577, the replacement to La. R.S. 9:2442, reads as follows:
The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument in his testament and shall sign his name at the end of the testament and on each other separate page.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ___ day of ______, ___." (Emphasis added).
The primary difference between the previous and current law is that the words "notarial testament" are substituted for "statutory will" or "will."

In La. R.S. 9:2442, the word "shall" appears five times; the word "presence" appears four times. The word "and, mandatorily significant, appears twelve times. The only time the disjunctive "or" is used is to separate "declared or signify(ied)." It is clear that the legislative intent is patent, requiring application of the most focused formality in the process of will preparation.

In this opinion, as the term "testator" does not specify the word "testatrix," the writer uses the term "testator" to include both "testator" and "testatrix." There are two documents proffered as wills, and it is to be understood, as set forth in the statute, that "testator" can and does include either or both parties.

The requirement of formality with the confection of the will together, with all attendant requirements such as use of valid attestation clauses, is heightened for wills prepared after the enactment of Act 1421, § 8 of the 1997 Session of Louisiana Legislature, effective July 1, 1999. The reason inter alia is that under the subject will, proof requirements were necessary pursuant to the former La. C.C.P. art. 2887. Wills prepared as notarial testaments after Act 1421 of 1997 are not "self-proving." The rationale for allowing a notarial testament to be self-proving is questionable, yet this evidences an intent of the legislature that the very instrument itself must be carefully prepared. This writer concludes that this may be considered in light of the argument of some that a "liberal trend" exists in connection with the interpretation of the validity of wills in the context of their preparation. Indeed, the path of legislative development indicates a more stringent importance placed on proper will preparation.

A cursory examination of this point might lead one to think that obviously these persons witnessed the signing of the documents, because signatures appear stating as much. However, verification of witness signatures must come from inside the document-by the notary public. Examination of only the document itself indicates that there is no verification of witness identity. These questions would not arise had all been in the "presence" of one another, and had the notary public "witnessed" the signing of the documents by the witnesses via a proper attestation clause.

There has been much discussion concerning the "changed date" from December 18, 1992, to December 10, 1992. This writer believes that the trial judge would have made a factual/legal finding as to this issue if deemed significant. There was no such finding; thus, this writer does not engage in placing emphasis on this point.