Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,603-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA


* * * * *


SUCCESSION OF
MARY PATRICIA HOLMES

* * * * *


Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 646,027

Honorable Ramon Lafitte, Judge

* * * * *

| | |
|---|---|
| WILLIE BOWERS, JR. | In Proper Person, Appellant |
| LORI POUNCY | In Proper Person, Appellee |
| TENYIA WELCH | In Proper Person, Appellee |
| TREVONNE BOWERS | In Proper Person, Appellee |


* * * * *


Before PITMAN, STEPHENS, and MARCOTTE, JJ.

**PITMAN, C. J.**

Plaintiff Willie Bowers, Jr. ("Bowers") appeals the district court's judgment denying his petition to annul a will. For the following reasons, we affirm.

**FACTS**

On September 11, 2023, Bowers filed a petition to open the estate of his mother Mary Patricia Holmes ("Decedent").[1] He stated that Decedent died on December 30, 2022; that she had a testament dated June 16, 2021 (the "2021 Will");[2] that she wished to appoint him as independent administrator; and that he would accept this appointment. On September 12, 2023, the district court signed an order to open Decedent's estate.

On January 3, 2024, Bowers filed a petition to annul a will dated July 28, 2022 (the "2022 Will").[3] He named as defendants and alleged undue influence in the creation of the 2022 Will by Inez Wilson, the notary; by Lori Pouncy, his sister and Decedent's daughter; and by Decedent's grandchildren Trevonne Bowers, Tenyia Welch, Trezhur Taylor and Tearney Welch. He believed Decedent's signatures on the 2022 Will to be forged and noted that an expert document examiner determined that Decedent did not author her signatures and that her last name is spelled incorrectly as "H-o-l-n-e-s." He requested that the court annul the 2022 Will and acknowledge the 2021 Will as Decedent's last will and testament, naming him as administrator and executor. He also stated that he should be

---

[1] According to the petition, Decedent was divorced and had six children, two of whom predeceased her.

[2] In the 2021 Will, Decedent left her house solely to Bowers.

[3] In the 2022 Will, Decedent left her house to her four surviving children, including Bowers.

awarded compensatory damages in the amount of $150,000 from each Defendant for their "volitional acts and concocted stories."

A hearing was held on May 30, 2024. Inez Wilson testified that she and Decedent knew each other for 50 years and were like sisters. She stated that she typed and notarized the 2021 Will and that Decedent signed it in her presence. Wilson testified that she also typed the 2022 Will, notarized it and was present at Decedent's home when she signed it. She contended that Decedent correctly spelled her last name "H-o-l-m-e-s." Wilson recalled that when Decedent signed the 2022 Will, she was crying, shaking and very upset. She explained that Decedent changed her will because she did not want to leave her house to Bowers, and she recalled that Decedent asked Bowers to return his copy of the 2021 Will. Wilson stated that Bowers was not present during the signing of the 2022 Will, but Pouncy and the grandchildren were. Bowers presented Wilson with a copy of Decedent's medical records from April 2022, which stated that Decedent had short term memory loss for at least the past two months. He also presented her with a report from the Shreveport Fire Department from the day before the 2022 Will was signed, which described Decedent's behavior state as "anxiety or worries."

Lori Pouncy testified that Decedent was never diagnosed with memory loss but did experience it in 2022 when she had a urinary tract infection. She stated that she was present when the 2022 Will was executed. Tenyia Welch testified that she was present at Decedent's house when the 2022 Will was executed. Trevonne Bowers testified that he was present when Decedent signed the 2022 Will. He stated that it appeared Decedent spelled her last name "H-o-l-m-e-s."

2

Sharon Ottinger, a document examiner, opined that Decedent did not author any of her three signatures on the 2022 Will as she found multiple discrepancies when comparing these signatures to copies of her known signature. She stated that on the 2022 Will, Decedent spelled her last name "H-o-l-n-e-s" twice and "H-o-l-m-e-s" once. She also described differences in how the letters in Decedent's name were written and compared gaps between letters. When the district court commented, "Sometimes when you sign your name, it's not always going to be the same," Ottinger agreed, "It will never be the same."

Following the testimony of the witnesses, the district court noted that Wilson drew up a new will to comply with Decedent's wishes, that the witnesses to the 2022 Will testified to being present when it was executed and that the 2022 Will was executed in Wilson's presence. The court stated that it had no reason to believe the signatures on the 2022 Will are not Decedent's signatures. Accordingly, the court denied the petition to annul.

On January 22, 2025, the trial court filed a judgment denying the petition to annul. During a jurisdictional check of this appeal, this court determined that the judgment lacked the proper decretal language and remanded for amendment of the judgment. On July 31, 2025, the trial court filed an amended judgment denying Bowers's petition to annul in favor of Defendants and dismissing his petition.

Bowers appeals.

**DISCUSSION**

*Fraud*

In his first assignment of error, Bowers argues that the district court erred in determining that the signatures on the 2022 Will are Decedent's

3

signatures. He contends that these signatures are fraudulent and that the court erred in rejecting the document examiner's testimony.

A donation *mortis causa* shall be declared null upon proof that it is the product of fraud or duress. La. C.C. art. 1478. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud may also result from silence or inaction. *Id*. A donation *mortis causa* shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor. La. C.C. art. 1479.

A person who challenges a donation because of fraud, duress or undue influence must prove it by clear and convincing evidence. La. C.C. art. 1483. However, if, at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress or undue influence by a preponderance of the evidence. *Id*.

In a will contest, an appellate court must accord great weight to the factual findings of the trial court and cannot disturb such findings in the absence of manifest error. *Succession of Rogers*, 51,267 (La. App. 2 Cir. 9/27/17), 243 So. 3d 1209.

Bowers has not met his burden of proving that the 2022 Will should be nullified due to fraud or undue influence. Although he suggests that Decedent did not sign her own name on the 2022 Will, the evidence

4

presented at trial does not support his argument. As noted by the trial court, Wilson, Pouncy and the grandchildren each testified that they were present when the 2022 Will was executed, i.e., that Decedent signed the 2022 Will in their presence. Wilson testified that Decedent wished to replace her 2021 Will and that she typed the 2022 Will to comply with Decedent's request.

Although the document examiner, who was not offered or accepted as an expert witness, opined that Decedent did not sign the 2022 Will, she conceded that a person's signature "will never be the same." The trial court also analyzed the signatures on the 2022 Will as well as the document examiner's materials that compared Decedent's handwriting sample to the signatures on the 2022 Will. The trial court concluded that the signatures on the 2022 Will were Decedent's signatures, and no evidence presented at trial demonstrates that the trial court erred in that determination.

Accordingly, this assignment of error lacks merit.

*Execution of the 2022 Will*

In his second assignment of error, Bowers argues that the 2022 Will was not properly executed in accordance with La. C.C. arts. 1577 and 1579.[4] He alleges that there was no reading aloud of the will and that the witnesses, who are Decedent's grandchildren, have a conflict of interest.

A disposition mortis causa may be made only in the form of a testament authorized by law. La. C.C. art. 1570. The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. C.C. art. 1573. At the time the 2022 Will was executed,

---

[4] These statutes were repealed in 2025 as part of a rewriting and simplification of the statutes concerning testaments. A revision comment notes, "Although this revision alters the requirements necessary for the validity of a notarial will, a notarial will properly executed under the prior law would still be valid and self-proving under this revision."

the formalities for notarial testaments were set forth in La. C.C. art. 1577 through 1580.1. La. C.C. art. 1577 stated:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

La. C.C. art. 1579, which applied when a testator is unable to read, required that the testament be read aloud in the presence of the testator, the notary and two competent witnesses.

The fact that a witness or the notary is a legatee does not invalidate the testament. La. C.C. art. 1582. A legacy to a witness or the notary is invalid, but if the witness would be an heir in intestacy, the witness may receive the lesser of his intestate share or the legacy in the testament. *Id*.

There is a presumption in favor of the validity of a testament, but proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. *Succession of Rogers*, *supra*, *citing In re Succession of Holbrook*, 13-1181 (La. 1/28/14), 144 So. 3d 845.

A review of the 2022 Will confirms that it was a properly executed notarial testament. It was prepared in writing and dated. Decedent signed her name on both pages of the document and at the end of the testament. The notary and two witnesses signed a declaration that states:

> In our presence the Testatrix has declared or signified that this instrument is her Last Will and Testament and has signed it at the end and on each other separate page, and in the presence of the Testatrix and each other we have hereunto subscribed our names this 28th day of July 28, 2022.

The notary and witnesses also testified at trial that Decedent signed the 2022 Will in their presence. Nothing in the record suggests that Decedent did not know how to read or that she was physically impaired to the extent that she could not read. Therefore, the requirement that the testament be read aloud, as set forth in La. C.C. art. 1579, is inapplicable to this case. Decedent's grandchildren serving as the witnesses also does not invalidate the testament.

Accordingly, this assignment of error lacks merit.

*The Notary*

In his third assignment of error, Bowers argues that Wilson violated her duties as a notary when executing the 2022 Will because of her conflict of interest. He alleges that she gave false testimony regarding the execution of the 2022 Will. He also contends that her signature on the 2022 Will does not match her commission name, i.e., that she signed as "Inez Davis" rather than "Inez D. Wilson."

Despite Bowers's allegations against Wilson, as discussed above, the 2022 Will conformed with the required formalities of a notarial testament. Following Wilson's testimony at trial, the trial court determined that she acted in accordance with Decedent's wishes when she prepared the 2022 Will and that Decedent signed the 2022 Will in her presence. Nothing in the record suggests that the trial court erred in finding Wilson's testimony to be credible.

The notary shall type, print or stamp his or her name as it appears on his or her commission. La. R.S. 35:12(A)(2). Although Bowers argues that

7

Wilson's signature on the 2022 Will does not comply with the requirements of La. R.S. 35:12(A)(2), his argument incorrectly addresses Wilson's signature rather than her name. Wilson's name is stamped on the 2022 Will as "Inez D. Wilson."

Accordingly, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Plaintiff Willie Bowers, Jr.'s petition to annul. Costs of this appeal are assessed to Plaintiff Willie Bowers, Jr.

**AFFIRMED.**